HELEN A. PECK *vs.* JOHN A. MCLEAN and another.

## December 18, 1886.

**Parties to Actions—Part-owners of Personal Property.**—One tenant in common of personal property may separately maintain an action against a stranger for a wrong done to it, if his cotenants refuse to join with him as plaintiffs, and they are non-residents of, and are out of, the state.

**Erroneous Judgment as a Protection until Reversed.**—An erroneous judgment is valid till reversed, and protects the plaintiff in enforcing it.

**Same — Liability of Plaintiff in Execution on Reversal.**—Where, on an erroneous judgment, before its reversal, execution is issued, and the defendant's property levied on and sold, the defendant, after a reversal, is entitled to restitution from the plaintiff of only so much as plaintiff received upon the execution.

Appeal by plaintiff from an order of the district court for Hennepin county, *Rea*, J., presiding, sustaining a demurrer to the complaint.

*J. D. Springer*, for appellant.

*Flandrau, Squires & Cutcheon*, for respondents.

GILFILLAN, C. J.   This cause comes here upon an order sustaining a demurrer to the complaint.   The questions raised by the demurrer

are that there is a defect of parties, and that the complaint does not state facts sufficient to constitute a cause of action. The case stated by the complaint is this: Plaintiff was the owner of seven-eighths, and Mary F. Aiken of one-eighth, of the steamboat Nellie Peck. Plaintiff was the owner of three-fifths, and John H. Charles, as trustee, of two-fifths, of the steamboat General Meade. Plaintiff was the owner of three-fourths, and H. C. Aiken of one-fourth, of the steamboat General Terry. In January, 1883, the defendants commenced, in the district court of the United States for the district of Nebraska, an action *in rem* against each of said steamboats, to recover for supplies furnished, and the vessels were taken on mesne process. The said owners filed answers. In July, 1883, a decree was entered by said court in each of said actions, directing the vessel to be sold to satisfy the amount found to be a lien upon it. The owners, in July, 1883, took an appeal in each of said actions to the circuit court of the United States. In October, 1883, at the instance of these defendants, process was issued upon such decree in each of said actions, and upon such process each of the vessels was sold. The amount for which it was sold is stated, but it is not alleged that any part of such amount was paid to these defendants. In August, 1884, the circuit court entered a decree in each action, reversing the decree of the district court.

The plaintiff resides in Iowa; the defendants, in Dakota; Mary F. and H. C. Aiken, in Nebraska; John H. Charles, in Pennsylvania. Plaintiff's co-owners are none of them within the state, or within the jurisdiction of its courts, and they all refuse to join with her in any action or actions in the premises.

The questions presented in the case are, can plaintiff maintain the action under the circumstances without making her co-owners parties? and, if so, can she recover, the defendants not having received any part of the money for which the vessels sold?

The fact that the co-owners are not within the jurisdiction, and cannot be brought in as defendants, is a sufficient reason for not making them defendants, if, in a case like this, that might otherwise be done, under our practice. Such being the case, is it absolutely essential that they be made plaintiffs? The statute (Gen. St. 1878,

*c.* 66, § 26,) provides that "every action shall be prosecuted in the name of the real party in interest." But where there are several who are entitled to the benefit of the relief sought, *i. e.*, several real parties in interest, whether they must all be joined, or whether, under peculiar circumstances, one of them may sue alone, must be determined by the law as it was before the statute, for the latter does not provide for such a case. The general rule is stated by Chitty: "When two or more persons are jointly entitled, or have a joint legal interest in the property affected, they must, in general, join in the action, or the defendant may plead in abatement." 1 Chit. Pl. *64. As to tenants in common, a distinction has always existed between actions for the realty and personal actions. "When the action is in the realty, they must sue separately; when in the personalty, they must join." *Hill* v. *Gibbs,* 5 Hill, 56; Co. Litt. 198*a.* The rule applies to part-owners of ships. "Whether the action be in contract or in tort, for services rendered by, or for injuries done to, their ship, all should join in its prosecution." Freem. Cotenancy, § 387.

It will be seen that Chitty states the rule as "in general," implying that there may be exceptions to it; and, unless there may be exceptions, it is apparent that what is only a rule of practice, affecting only the mode of proceeding to redress a wrong, will sometimes operate to altogether prevent a remedy. The reason for the rule—to protect defendants against multiplicity of suits—is good. But if, adhered to, it will in a particular case cause a failure of justice, the reason for departing from it is stronger than that for the rule. It is better that a defendant should be put to the danger and inconvenience of several suits than that a plaintiff should be deprived of a remedy. So, where a third person colluded with a partner in a firm to injure the other partners, they might, without joining their partner, maintain an action against the third person. *Longman* v. *Pole,* 1 Moody & M. 223.

An instance of an exception allowed of necessity to the general rule as to parties, was in the case of *femes covert.* Thus the wife was permitted to sue alone, where the husband was in exile, (Co. Litt. 132*b,*) or had abjured the realm, (*Wilmot's Case,* Moore, 851; *Dubois* v. *Hole,* 2 Vern. 613;) or where he was an alien enemy, (*Derry* v.

*Duchess of Mazarine,* 1 Ld. Raym. 147;) or where he, a foreigner, never in the United States, had deserted her in a foreign country. *Gregory* v. *Paul,* 15 Mass. 31.

We are not cited to, and do not find, any case like this; but the reason for holding it an exception to the general rule is as strong as could ever exist in any case, as plaintiff's co-owners are out of the jurisdiction, and therefore cannot be brought in as defendants; and, as they refuse to join as plaintiffs, she will be entirely without remedy, if we rigidly apply the general rule. The case comes within the reason for making an exception, and we regard it as such. The ground of demurrer that there is a defect of parties is not well founded.

There is some variance in the authorities on the question whether a defendant in an erroneous judgment may, after its reversal, recover the full value of his property sold on an execution upon the erroneous judgment before its reversal, or only so much as the plaintiff has realized upon the execution. It seems to us that the decisions holding the latter are more in accordance with principle, for the erroneous judgment is valid until reversed. It is the act of the court, and the party may, until reversal, justify under a regular execution upon it. *Bank of U. S.* v. *Bank of Washington,* 6 Pet. 8. This is the generally recognized rule. After a reversal, the plaintiff is bound to make restitution,—that is, to return to the defendant whatever he got by means of the judgment,—but he cannot be treated as a wrong-doer for causing execution to issue, and the defendant's property to be levied on and sold. It protects him while it remains in force. It may seem a hardship to the defendant in such a judgment that under it his property may be sold for greatly less than its value, and his right of restitution be limited to what came into the hands of the plaintiff. But such hardship, when it occurs, will generally, if not always, be the result of his own acts. If, by failing to appeal, or to obtain a *supersedeas* on an appeal, he permits the judgment to remain in force and enforceable, he can hardly complain that the other party proceeds to enforce it. To entitle the defendant to restitution, it must appear that the money has been paid to the plaintiff. *Eubank* v. *Ralls,* 4 Leigh, 308. Among the cases holding as we do, we may refer to the following: *Gay* v. *Smith,* 38 N. H. 171; *Bickerstaff*

v. *Dellinger*, 1 Murph. (No. Car.) 272; *McJilton* v. *Love*, 13 Ill. 486, (54 Am. Dec. 449;) *Eyre* v. *Woodfine*, Cro. Eliz. 278; *Westerne* v. *Creswick*, 4 Mod. 161; *Lovett* v. *German Ref. Church*, 12 Barb. 67; *McGuire* v. *Ely*, Wright, 520.

For the reason, then, that the complaint does not show that any money came into the hands of these defendants, it does not state any cause of action.

Order affirmed.